R. B. BROWN and L. A. BROWN, Appellants, v. JAMES A. HOUCHIN, Respondent.

Kansas City Court of Appeals, January 16, 1911.

1. **PARTNERSHIP: Burden of Proof.** In a suit in equity to wind up the affairs of a partnership composed of plaintiffs, and also to hold defendant as a partner, defendant's relationship to the business having never been made public, where plaintiff's evidence was equally consistent with defendant's contention that he had signed a certain note merely as surety, *Held*, that the burden of proof was on plaintiffs to establish the fact of a partnership, and that the evidence was not of sufficient strength to warrant setting aside the judgment.

2. **APPELLATE PRACTICE: Equity.** In equity cases, appellate courts do not give the findings of trial courts the same effect that they accord the verdict of juries, but they weigh evidence, and reverse judgments which they believe are not sustained by the weight of the evidence. However, when facts and circumstances are evenly balanced, they are disinclined to set aside the judgment of the trial judge.

Appeal from Cole Circuit Court.—*Hon. Sam Davis, Judge.*

AFFIRMED.

*Hazell, Edwards & Lay* for appellants.

*W. S. Pope* for respondent.

JOHNSON, J.—This is a suit in equity to wind up the affairs of a partnership which plaintiffs allege was composed of themselves and defendant and which proved to be a losing venture. Defendant denied the existence of the partnership. After hearing the evidence, the trial court rendered judgment for defendant and after unsuccessfully moving for a new trial plaintiffs brought the case here by appeal.

No written contract of partnership was made by the parties but plaintiffs contend the relation was established by oral agreement and was recognized by defendant until it became apparent that the business conducted by the firm would entail a heavy loss when defendant, whose relation to the business had not been made public, repudiated the contract and refused to acknowledge his connection as a partner. It is claimed the losses of the business borne by plaintiffs, aggregated $4662.92, and that since defendant and plaintiffs were to share profits and divide losses equally, defendant is liable to plaintiffs in the sum of $1554.30, one-third of the total loss.

Material facts disclosed by the evidence are as follows: At the time of the transaction in question the parties lived at Jefferson City. Plaintiff, R. B. Brown, was a dairyman and farmer, and his co-plaintiff, who is his brother, was employed in the insurance department of the state. Defendant was a manufacturer of overalls and was the proprietor of fair grounds at Jefferson City, where he kept a number of horses. He had been acquainted with one of the plaintiffs a year or more and with the other but a few months.

In the spring of 1906, plaintiffs, under the name of Brown Brothers, purchased a lot of unbroken horses in Nebraska, and brought them to Jefferson City for re-sale. After they had been sufficiently broken by plaintiffs, unsuccessful attempts were made to sell

them and, finding that profitable sales, could not be effected, plaintiffs endeavored in various ways to work the animals to advantage. Every effort to escape loss proved unavailing and the horses were kept so long before they could be sold and at such expense that figuratively they "ate their heads off." Plaintiffs had no ready capital and were compelled to borrow the money invested in the business. First, they borrowed two thousand dollars, of a bank in Jefferson City for which they gave a note due in sixty days, signed by themselves and defendant. They claim defendant signed the note pursuant to the alleged oral partnership agreement, while defendant claims he signed it as surety for plaintiffs.

The cashier of the bank testified that when plaintiffs borrowed the money, they stated defendant would sign the note, but said nothing about defendant being a partner. Plaintiffs say they told the cashier defendant was a partner, but they admit they kept from public knowledge the fact of defendant's relation to the business, for the reason that defendant was in a position to send buyers to them for horses and they thought he would have more influence with buyers if his advice appeared disinterested. The note to the bank was not paid when due and defendant was compelled to pay it. At his persistent demand, plaintiffs, who did not know he had paid the note, gave him a note for two thousand dollars by way of security and secured that note by a chattel mortgage on the horses. Eventually plaintiffs paid off this note but not until after defendant had replevined a number of the horses which plaintiffs had included in the mortgage and subsequently had sold.

We do not find it necessary to go further into the details of this case. There are facts and circumstances disclosed in the evidence of plaintiffs which tend to support their contention, among them, the fact of the brief acquaintance between plaintiffs and defendant

which would seem incompatible with the contention that a business man of defendant's experience and apparent capacity would become surety for a large amount for men of limited pecuniary means in whom he had no special interest, and the further fact that, at first, defendant appears to have taken a more lively personal interest in the venture than one would expect from a man whose time was occupied with his own business affairs. But these and similar facts and circumstances not only are counterbalanced by facts disclosed in the evidence of defendant, but are shown to be compatible with defendant's insistence that he signed the note merely as surety. It appears defendant built a race track at his fair grounds and used plaintiffs' horses without hire in building it. Thus he received good compensation for the risk he took in becoming surety and he was careful to protect himself against loss by compelling plaintiffs to give him a mortgage on the horses. The burden of proof is on the plaintiffs to establish the fact of the partnership alleged and we find plaintiffs have not produced evidence of sufficient strength to satisfy us that we should disturb the judgment.

In equity cases appellate courts do not give the findings of trial courts the same effect they accord the verdicts of juries, but they weigh evidence and reverse judgments which they believe are not sustained by the weight of the evidence. However, in weighing evidence in such cases, we take into consideration the advantage enjoyed by the trial judge from observing the parties and witnesses and where, as here, so much depends on the credibility of the parties, we are disinclined to set aside the judgment where the opposing facts and circumstances are so evenly balanced. To sum up the whole case, plaintiffs so well kept the secret of defendant's interest in the partnership of Brown

Brothers that they are unable to establish the existence
of such interest by a preponderance of evidence. Their
avowed motive for secrecy was not very creditable
to them, and they have no just cause to complain at
finding themselves "hoisted by their own petard."

The judgment is affirmed. All concur.